UNITED STATES of America,
Plaintiff–Appellee,

v.

Jeffery T. MILLER,
Defendant–Appellant.

No. 88–2993.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 22, 1989.

Decided May 9, 1989.

Gregory Collins, Stratton Dobbs Nardulli & Lestikow, Springfield, Ill., for defendant-appellant.

Bryron G. Codmore, Asst. U.S. Atty., Springfield, Ill., for plaintiff-appellee.

Before WOOD, Jr., MANION, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

The only issue is the sentence imposed on defendant Jeffery T. Miller under the United States Sentencing Commission Guidelines ("Guidelines"), pursuant to the Sentencing Reform Act of 1984, as amended, 18 U.S.C. § 3551 et seq. (Supp. IV 1986), and 28 U.S.C. §§ 991–98 (Supp. IV 1986).[1]

## I. PROCEDURAL BACKGROUND

On January 7, 1988 Miller was indicted in the Central District of Illinois and charged with the December 2, 1987 robbery of a federally insured savings and loan association in Springfield, Illinois in violation of 18 U.S.C. § 2113(a) (1982).[2] Several weeks earlier on November 20, 1987, Miller had also robbed a federally insured savings and loan association in Pineallas Park in the

---

1. Since the charged offenses occurred after November 1, 1987, the Act is applicable.

2. An additional count charging a violation of 18 U.S.C. § 2113(d) growing out of the same occurrence was later dismissed by the government when it was determined that Miller had not put lives in jeopardy by means of a dangerous weapon since he had used a toy gun, as he had in the Florida case next mentioned.

Middle District of Florida in violation of the same statute.[3] Thereafter he waived indictment, consented to proceeding by information, and agreed to the transfer of the Florida case to the Central District of Illinois for plea and sentencing. The defendant pleaded guilty to the one remaining Illinois count and to the Florida information. On October 4, 1988 Judge Mills sentenced Miller, so far as this appeal is concerned, to concurrent terms of 45 months,[4] an enhanced sentence under the new sentencing act. The defendant challenges that enhancement as being in excess of what the sentencing act contemplates in these particular factual circumstances, and further contends that the sentence was not properly determined in accordance with the procedures mandated by the sentencing act. The sentencing hearing, therefore, needs to be examined.

## II. SENTENCING HEARING

In light of his presentence report, Miller's base offense level was determined to be 19, after adjustment upward for the separate bank robberies and downward for Miller's acceptance of responsibility for the crimes. The guideline imprisonment range was determined to be 30–37 months, after computation established that Miller's criminal history placed him in Criminal History Category I under the Guidelines. Up to this point the court, the government and Miller were all in agreement. However, Judge Mills decided, not without good reason, that the resulting sentence range did not produce an adequate sentence in view of certain prior criminal conduct of Miller. He therefore sentenced Miller to 45 months in the Florida and the Illinois cases. Under the Guidelines, that sentence jumped from Criminal History Category I over Category II to the upper limit of Category III. *See* Guidelines, at 5.2 (Sentencing Table). This appeal followed.

3. The statute provides for a fine of not more than $5,000 or imprisonment for not more than 20 years or both.

4. Judge Mills also imposed an alternate sentence in the event the Sentencing Reform Act of

## III. ANALYSIS

Miller first argues that Criminal History Category I adequately reflected the seriousness of his past conduct because there was no "reliable information," as required by Guidelines § 4A1.3 (Adequacy of Criminal History Category (Policy Statement)), to justify the increase to Category III. Judge Mills properly relied on section 4A1.-3, the applicable parts of which are set out.

If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guide range. Such information may include, but is not limited to, information concerning:

\* \* \* \* \* \*

(d) whether the defendant was pending trial, sentencing, or appeal on another charge at the time of the instant offense; (e) prior similar adult criminal conduct not resulting in a criminal conviction.

\* \* \* \* \* \*

Examples might include the case of a defendant who ... (4) committed the instant offense while on bail or pretrial release for another serious offense.... The court may, after a review of all the relevant information, conclude that the defendant's criminal history was significantly more serious than that of most defendants in the same criminal history category, and therefore consider an upward departure from the guidelines. However, a prior arrest record itself shall not be considered under § 4A1.3.

Guidelines § 4A1.3.

■ The presentence report revealed several adult charges (juvenile offenses were not considered) which were pending against Miller in the Illinois courts at the

1984 would be found unconstitutional. This alternate sentence was also challenged on appeal, but was rendered moot by *Mistretta v. United States,* —— U.S. ——, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989).

time the federal offenses were committed. The first was a misdemeanor charge in December 1985, charging Miller with a gasoline theft of less than $300, the details of which are not given in the report. On two separate occasions, after Miller failed to appear in court on this misdemeanor charge bench warrants were issued. The second charge was a state felony indictment returned in April 1986, charging Miller with the burglary of a hardware store. Several weeks after Miller entered guilty pleas to the federal charges these state charges were dismissed.

Miller argues that this prior offense information does not meet the Guidelines' "reliable information" requirement. Miller points out that as an adult he had no prior actual convictions. The local charges did not result in convictions, but were dismissed. Therefore, he argues, the dismissed charges do not evidence "criminal conduct" as no actual culpability appears in this record. Further, he argues, as set out in the last sentence of section 4A1.3, "a prior arrest record itself shall not be considered under § 4A1.3."

Defense counsel made these arguments to the district judge. The district judge, again understandably, did not believe that he should have to try the dismissed state charges in order to determine the defendant's culpability.[5] We have examined the presentence report. The report contains information from the state court records that detailed the local burglary arrest circumstances. Miller, with no right to be in the hardware store after it had closed, was arrested inside. That account is adequate and factually not contested by Miller. The misdemeanor gasoline theft charge, however, is less enlightening. What the factual circumstances were of that charge are not set out. The bench warrants for failure to appear were related to the misdemeanor charge. Defense counsel argues that Miller may not have received the court appearance notices, or had some other innocent explanation in defense of the bench warrants. There is no explanation in the presentence report. Government counsel denied, based on his personal knowledge as a former local assistant prosecutor, that there could be an innocent explanation for the bench warrants. Judge Mills commented on the bench warrants and specifically adversely considered them in imposing sentence.

■ The presentence report information on the misdemeanor charge, and the related bench warrants, is not as complete as it no doubt could be made upon a further check of the local court files, or by inquiry with the local state's attorney's office. To permit a departure, however, all that the Guidelines require is that the federal offense was committed while the defendant was awaiting trial on another offense. There does not have to be a conviction to permit departure. That Miller was awaiting trial on the local charges is not disputed. We anticipate that it will become the usual practice to include in presentence reports sufficient detail about prior criminal conduct, including that not resulting in conviction, in order to assist the court in determining "the variations in the seriousness of criminal history that may occur." Guidelines § 4A1.3 commentary at 4.10. What was supplied in the presentence report, however, is more than a mere prior arrest record and cannot be faulted merely on that basis under section 4A1.3, as urged by Miller.

Another aspect related to the "reliable information" requirement is the lack of record explanation for the state's dismissal of all local charges against Miller. State charges are often dismissed in ordinary course if the federal government presses an adequate case against the same defendant. Very likely, that is the reason for the dismissals in this case. That explanation, however, is not in the record, except again as offered in argument by the government prosecutor. Some explanation is needed. Although it is most unlikely, the local authorities could have decided

---

**5.** There may be times, however, when a sentencing court will have to examine convictions to some degree if the defendant claims that the

prior convictions are constitutionally invalid. Guidelines § 4A1.2 application note 6.

they had the wrong defendant, or for some other exculpatory reason dismissed the charges. Nevertheless, "a departure from the Guidelines in the limited circumstances where reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's criminal history ..." is authorized. Guidelines § 4A1.3 commentary at 4.10. It would be preferred that the presentence report set forth some explanation of the dismissals to assist the court in fairly considering the extent of any departure from the Guidelines. Presentence reports have been drastically revised under the Guidelines and are very helpful, but experience may suggest some additional modifications.

■ Our concern with this case arises out of the way the enhanced sentence was otherwise arrived at by Judge Mills. In deciding to add the additional months to the defendant's sentence, Judge Mills offered this explanation:

Now here's my rationale. Say 36 rather than 37 is the top of the range. For his criminal tendencies they're clearly demonstrated and particularly so by failure to appear in Court and requiring bench warrants to be issued for his apprehension. The fact that these robberies are taking place while there are pending criminal actions and keeping in mind the purposes of punishment, the seriousness of the offenses, deterrence to others to commit criminal actions, to protect the public are all reasons why I believe that taking one fourth of the 36 and enhancing the number of months up to 45 is fair under these circumstances. I don't know if I'm right or if I'm wrong but it seems to be that that is a fair enhancement.

It is obvious that Judge Mills was exercising his discretion in trying to arrive at a fair but adequate sentence. As Judge Mills explained, he took one fourth of 36 months, which is in the upper range of sentences under Criminal History Category I at Offense Level 19, and then added 9 months to the sentence to arrive at the total sentence of 45 months. That process, skipping over Category II, put the defendant in the upper reaches of Criminal History Category III, where the range is 37 to 46 months. That was equivalent to finding, under section 4A1.1, that Miller had actually served time on two felony convictions, or served time on one felony conviction and additional time on another conviction, felony or misdemeanor. See Guidelines § 4A1.1 (Criminal History Category).

It is true that even in the absence of actual sentencing, prior criminal conduct may be considered as specified in section 4A1.3. Section 4A1.3 permits enhancement, at least to some degree as we noted, based on the fact that the present offenses were committed while some other serious offense, the local burglary charge for instance, was pending and unresolved. See Guidelines § 4A1.3(d), (e) & example (4). Miller therefore cannot avoid some enhanced penalty for the dismissed local charges.

How to approach enhancement procedurally is also set forth in the Guidelines, the pertinent part of which follows:

In considering a departure under this provision, the Commission intends that the court use, as a reference, the guideline range for a defendant with a higher or lower criminal history category, as applicable. For example, if the court concludes that the defendant's criminal history category of III significantly under-represents the seriousness of the defendant's criminal history, and that the seriousness of the defendant's criminal history most closely resembles that of most defendants with a Category IV criminal history, the court should look to the guideline range specified for a defendant with a Category IV criminal history to guide its departure.

Guidelines § 4A1.3, at 4.9. We read this explanation to mean that the inquiry begins with an appropriately determined criminal history category. Any enhancement thereafter considered is not a matter of the sentencing judge's discretion as in bygone days, but must be made by reference to the higher criminal history categories and their intended applicability. When considering sentence enhancement, courts are directed

to look at the higher categories and determine if the defendant closely resembles other defendants who belong in some other category.

█ It appears that Category III, where Miller ended up, was determined by Judge Mills' mathematical exercise of discretion by adding on a quarter of the sentence otherwise determined from the Guidelines, rather than through the comparative process mandated by the Guidelines. Possibly the result may turn out to be about the same, but the Guidelines compel a particular procedure and the exercise of the sentencing judge's discretion within those parameters. Although we will be quite deferential to a sentencing judge's decision to impose a sentence within the correctly ascertained guideline range, we are obligated to review sentences imposed outside the guideline range under a "reasonableness" standard. *Compare* 18 U.S.C. § 3742(e)(2) *with* 18 U.S.C. § 3742(e)(3). Where we find that a departure from the guideline range is unreasonable, we must vacate a sentence and remand the case for further proceedings. 18 U.S.C. § 3742(f)(2). "Reasonableness" implies that a sentencing judge must provide articulable reasons, of a type contemplated by the Act and the Guidelines, and based on a sufficiently sound factual foundation, to justify a departure from the guidelines. For example, in *United States v. Otero*, 868 F.2d 1412 (5th Cir.1989), the sentencing court made an upward departure on the defendant's offense level based on the purity of the cocaine involved in the defendant's drug offense. Although the Guidelines specifically allow for an upward departure based on drug purity, *see* § 2D1.1 application note 9, the Fifth Circuit vacated the defendant's sentence, finding the departure unreasonable based on the record because the sentencing court failed to substantiate the evidence regarding drug purity. The appellate court also noted the sentencing court's failure to provide prior notice to the defendant of its intent to make an upward departure—the defendant found out at the sentencing hearing.

We observe finally that Judge Mills took particular note of the two state bench warrants that were outstanding against Miller when he committed the federal offense. If bench warrants are properly viewed as a prelude to a finding of contempt of the local court's notice to appear, it may be necessary to consider section 4A1.2(C)(1) of the Guidelines. That section excludes consideration of certain prior or similar offenses, for the purpose of computing criminal history, unless there was a sentence of at least 30 days or probation for at least one year. Contempt of court is the first example listed under the section. On the other hand, the Guidelines distinguish between information that can be considered in determining a defendant's guideline range, and information that may be considered when setting a sentence within a range or in deciding to depart from the range. *See* Guidelines § 1B1.4 & commentary at 1.20.

Many questions can be expected to arise under the Guidelines, but hopefully they will diminish as all parties gain familiarity with the Guidelines' procedures. It is not for us to determine the appropriate sentence here even with the use of the Guidelines. *See* 18 U.S.C. § 3742(f)(2). That must be left to the trial judge's exercise of discretion within the Guidelines, with a record explanation of how and why the sentence was enhanced. *See generally* Miller, *Guidelines are not Enough: The Need for Written Sentencing Opinions*, 7.1 Behavioral Sciences and the Law 3 (1989). If it were not for the need to follow the Guidelines, we would find no fault with Miller's sentence.

Insofar as the sentence imposed exceeds 37 months, it is vacated and the case remanded to the district court for reconsideration in accordance with this opinion and the requirements of the Guidelines. Circuit Rule 36 shall not apply.[6]

---

6. The defendant was represented by appointed counsel, Gregory Collins of Springfield, Illinois.

In reviewing the sentencing transcript his understanding of the Guidelines and procedures

was manifest. He was complimented by Judge Mills at the time. In this court, also, we note having the advantage of his good brief and oral argument.