**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Kenneth James SAVAGE,
Defendant–Appellant.**

**No. 89–1643.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 21, 1989.
Decided Nov. 2, 1989.

Grant C. Johnson, Asst. U.S. Atty., Office of the U.S. Atty., Madison, Wis., for the U.S., plaintiff-appellee.

Kenneth J. Savage, Madison, Wis., pro se.

Jeffrey Knickmeier, Stoughton, Wis., for Kenneth J. Savage, defendant-appellant.

Before WOOD, Jr., EASTERBROOK and RIPPLE, Circuit Judges.

EASTERBROOK, Circuit Judge.

After pleading guilty to stealing material from the mail, in violation of 18 U.S.C. § 1708, and bank fraud, in violation of 18 U.S.C. § 1344, Kenneth J. Savage asked for and received the privilege of surrendering voluntarily—which usually leads the Bureau of Prisons to hold the prisoner in a less secure (and more comfortable) facility. Sentencing took place in Madison, Wisconsin, on September 8, 1988; the judge ordered Savage to surrender to the Marshal in Madison by 4:00 p.m. on September 9. Savage did not appear on September 9. On September 12 his former wife called his pretrial services officer, who said that Savage could report to the Marshal in St. Paul, Minnesota. Savage turned himself in at 1:00 p.m. on September 12. He was charged with failing to surrender to serve a sentence, in violation of 18 U.S.C. § 3146(a)(2), and convicted after a jury trial.

The Sentencing Guidelines prescribe a base offense level of 6 for this crime, which must be increased by 6 when the underlying offense is punishable by a sentence between five and fifteen years, as the felonies created by §§ 1344 and 1708 are. Guideline § 2J1.6(a) and (b)(2). For someone with Savage's criminal history, an offense level of 12 translates to a sentence between 15 and 21 months, which under § 3146(b) runs consecutively to any other sentence. The district judge sentenced Savage to 15 months. Savage contends that Guideline § 2J1.6 is unconstitutional because it does not allow a judge to consider mitigating circumstances, particularly prompt voluntary surrender, although Guideline § 2P1.1(b)(2) allows a reduction

of 7 levels if a person who escapes from non-secure custody returns within 96 hours. The returning escapee ends up with an offense level of 6, while the tardy reporter has an offense level of 12. As Savage sees it, this distinction is irrational.

Doubtless the Guidelines are full of glitches. No project of this complexity can be perfect the first time (if ever). Recognizing that the Sentencing Commission could not possibly catalog all of the factors that might legitimately affect sentences, Congress authorized judges to depart from the Guidelines when they find "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines", 18 U.S.C. § 3553(b). So if the Commission neglected to consider prompt surrender as a mitigating circumstance, this might be a legitimate ground for departure. See also Sentencing Commission, *Guidelines Manual* 1.6–1.8 (October 1987) (Policy Statement 4(b)). Only if the Commission had considered and forbidden consideration of the expedition of the surrender as the basis for departure would we need to decide whether the difference between § 2J1.6 and § 2P1.1 satisfies statutory and constitutional requirements. Nothing in the Guidelines puts the length of delay in reporting off limits, and under Policy Statement 4(b) it takes an express direction to foreclose a particular consideration as a basis of departure. Failure of § 2J1.6 expressly to *include* the brevity of delay as a basis for reducing therefore does not establish that it has been excluded.

Differences between these two guidelines are at any rate not unprincipled. The reduction in the escape guideline is available only when the defendant escapes from "non-secure custody", which Application Note 1 defines as "custody with no significant physical restraint". Savage received an offense level of 12 under § 2J1.6 only because his crime was punishable by a sentence between five and fifteen years (Savage received five years in prison plus five more on probation), and such persons are

unlikely to be held in "non-secure custody". So the categories of persons covered by the rules—and the risks they pose if at large—differ, which may justify different punishments. Too, the statutes have differences that may call for different sentences. Escape from custody is close to a strict liability offense. *United States v. Bailey,* 444 U.S. 394, 408, 100 S.Ct. 624, 633–634, 62 L.Ed.2d 575 (1980) (prosecution fulfills its burden by showing "that an escapee knew his actions would result in his leaving physical confinement without permission"; good reasons for leaving, short of duress, are not a defense). Failure to report is a crime only if done "knowingly", and under § 3146(c):

> It is an affirmative defense to a prosecution under this section that uncontrollable circumstances prevented the person from appearing or surrendering, and that the person did not contribute to the creation of such circumstances in reckless disregard of the requirement to appear or surrender, and that the person appeared or surrendered as soon as such circumstances ceased to exist.

The Sentencing Commission might conclude that this defense eliminates the need for separate consideration of such excuses in sentencing.

Savage's reasons for his belated surrender could have been raised under § 3146(c). After sentence was pronounced in Madison on September 8, Savage immediately drove to St. Paul. According to Savage's testimony, his car broke down on the return trip to Madison the next day, and he spent the night in his former wife's house, which lacked a telephone. Although not disputing this story, the prosecution observed that on September 10 Savage reached a phone but used it only to inquire from local officials whether a warrant had been issued for his arrest; he did not make any effort to reach Madison and did not notify federal officials of his whereabouts until September 12. After the parties (and the court) discussed the defense under § 3146(c), Savage's trial counsel asked the court not to give an instruction on the subject. The court complied. Having by-

passed his opportunity to raise the defense under § 3146(c), Savage is not in a good position to contend that the Guidelines are unconstitutional because they do not address the role of similar arguments in sentencing.

This case logically is about grounds for departure from the Guidelines rather than about their validity. Savage did not request departure either in the district court or on appeal. If we were to construe his constitutional challenge as a maladroit request for departure, this would not avail him because we do not have jurisdiction to entertain appeals from discretionary refusals to depart downward. *United States v. Franz,* 886 F.2d 973 (7th Cir.1989).

■ Although Savage finally maintains that 15 months' imprisonment violates the Cruel and Unusual Punishments Clause of the Eighth Amendment, that amendment is not a source of supervisory authority over the many discretionary distinctions that must be made in implementing a consistent sentencing policy. Imprisonment is neither cruel nor unusual for Savage's crime, and fine-tuning the duration of imprisonment is not a function of the Constitution.

AFFIRMED.